UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHARINE PRESCOTT, an individual, and KATHARINE PRESCOTT, on behalf of KYLER PRESCOTT, a deceased minor,<br><br>Plaintiff,<br><br>v.<br><br>RADY CHILDREN'S HOSPITAL-SAN DIEGO,<br><br>Defendant. | Case No.: 16-cv-02408-BTM-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STAY** |

Before the Court are Defendant Rady Children's Hospital, San Diego's ("RCHSD") motion to dismiss and motion to stay. (ECF No. 9, 15.) The Court discusses each below.

## **I. BACKGROUND**

Plaintiff Katharine Prescott brought this action against RCHSD on behalf of herself, and on behalf of Kyler Prescott, her deceased minor son. (ECF No. 1 ("Compl.").) RCHSD is a nonprofit healthcare organization affiliated with the University of California, San Diego School of Medicine that receives federal and state assistance. (Compl. ¶ 20–22.) Mr. Prescott alleges that RCHSD

"advertises its expertise in treating transgender and gender noncomforming children and adolescents through its Gender Management Clinic . . . ." (Id. at ¶ 23.) "RCHSD held itself out and warranted itself to the public as competent, careful, and experienced in the care and treatment of patients, particularly transgender patients and those with gender dysphoria[1]." (Id.) Additionally, RCHSD's website states that transgender youth "deserve to have a medical home at Rady Children's Hospital—San Diego." (Id.)

Kyler was assumed to be female at birth. (Id. at ¶ 29.) However, at the age of ten Kyler began exhibiting signs that he was a boy. (Id.) At the age of twelve, due to increasing gender dysphoria, Kyler began engaging in self-harming behaviors. (Id.) When Kyler was thirteen, he told Ms. Prescott that he was a boy. (Id. at ¶ 30.) As Kyler entered puberty, his gender dysphoria significantly worsened and he continued to engage in severe self-harming behaviors. (Id.) Concerned about his mental health, Kyler's parents and then-therapist focused their therapy sessions on helping him cope with his gender dysphoria and depression. (Id.) When Kyler was thirteen, with the support of his parents, he socially transitioned[2] to living life as a boy. (Id. at ¶ 34.) At fourteen Kyler began seeing Darlene Tando, an expert in providing therapy to transgender youth. (Id.) In September 2014, Kyler's endocrinologist, a physician in the Gender Management Clinic at RCHSD, approved him for puberty-delaying medication. (Id. at ¶ 35.) In October 2014, Kyler received his first treatment. (Id.)

---

[1] Gender dysphoria is defined "as a marked difference between a person's gender identity and their assumed gender at birth, which persists for at least six months and manifests itself in at least two other symptoms (*e.g.*, "a desire to prevent the development of the anticipated secondary sex characteristics," "a strong desire to be of the other gender," and/or "a strong desire to be treated as the other gender"). (Compl. ¶ 26.)

[2] "Transition is the process by which a person brings their outer appearance and identity into close alignment with their gender identity, or affirmed gender. Social transition specifically refers to steps of a transition that do not involve medication or surgical intervention, and can include changing one's name and pronouns, and wearing clothes that match the person's affirmed gender." (Compl. ¶ 32.)

Despite the positive effects Kyler's transition had on his mental health, he still experienced depression and gender dysphoria. (Id. at ¶ 36.) For a transgender person with gender dysphoria, being referred to by the wrong gender pronoun is often incredibly distressing. (Id. at ¶ 37.) For Kyler, being misgendered caused him psychological distress. (Id. at ¶ 38.) This led Kyler to withdraw from his charter school and instead participate in a private independent study. (Id.)

On April 5, 2015, Ms. Prescott took Kyler to the Sam S. and Rose Stein Emergency Care Center of RCHSD because of his suicidal thoughts related to gender dysphoria and to treat his self-inflicted lacerations. (Id. at ¶ 39.) In the early morning of April 6, 2015, Kyler was admitted to RCHSD's Child and Adolescent Psychiatry Services ("CAPS") unit on a Cal. Welf. & Inst. Code section 5150 hold for psychiatric inpatient care. (Id.) The RCHSD and CAPS staff was informed by Ms. Prescott of Kyler's male identity and "his need to be referred to exclusively with male gender pronouns." (Id. at ¶ 40.) Kyler's medical records reflected his legal name and gender change. (Id. at ¶ 40.) His male gender identity was also denoted on his RCHSD medical wrist bracelet. (Id.) Upon intake, the RCHSD staff assured Ms. Prescott "that Kyler's sex and gender identity would be respected and affirmed" and that "all staff would refer to Kyler with male gender pronouns and would otherwise treat him as a boy." (Id. at ¶ 41.)

Despite knowing that Kyler was a "transgender boy in acute psychological distress," "nursing and other RCHSD staff repeatedly addressed and referred to Kyler as a girl, using feminine pronouns." (Id. at ¶ 43.) Kyler complained to his mother during his stay that the staff referred to him with feminine pronouns, which caused him extreme distress. (Id. at ¶ 44.) Kyler also reported that while the other children who were patients initially referred to him with male pronouns, after the RCHSD staff's repeated use of female pronouns, the children also

began calling him "she." (Id.) After Kyler was discharged, he also told Ms. Prescott that one RCHSD employee told him, "Honey, I would call you 'he,' but you're such a pretty girl." (Id.) Every time Ms. Prescott observed staff calling Kyler "she," she reiterated that "it was essential to exclusively refer to Kyler with male gender pronouns, and that misgendering caused him serious harm." (Id. at ¶ 46.)

During Kyler's stay, Ms. Prescott called RCHSD numerous times to share Kyler's reports of misgendering and remind the staff of the need to refer to Kyler with male pronouns. (Id. at ¶ 46.) The Complaint alleges that in response, RCHSD blocked her number, "leaving her unable to call the CAPS unit, which had control over her son during his time of distress, as well as leaving her unable to solicit updates on Kyler's condition." (Id. at ¶ 47.) As a result of RCHSD staff's conduct, Kyler suffered severe emotional distress and harm, and Ms. Prescott was and continues to be traumatized by the experience. (Id.) Despite concerns over Kyler's continuing depression and suicidal thoughts, Kyler's medical providers concluded that he should be discharged early from the hold at RCHSD because of the staff's conduct. (Id. at ¶ 51.) On April 7, 2015, Kyler was discharged from RCHSD's facility. (Id. at ¶ 52.) After being discharged, Kyler continued to feel anxious and depressed as a result of RCHSD staff's treatment during his stay. (Id. at ¶ 53.) On May 18, 2015, Kyler died by suicide. (Id. at ¶ 54.)

Ms. Prescott now brings this action against RCHSD alleging numerous causes of action including violations of the Affordable Care Act § 1557, 42 U.S.C. § 18116 ("ACA"), California's Unruh Civil Rights Act, Cal. Civ. Code. § 51, California Government Code § 11135, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and California's Fair Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL").

//

## II. STANDARD

**A. Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In deciding a motion to dismiss, a court may consider the facts alleged in the complaint, exhibits attached to the complaint, and documents whose authenticity is not questioned and upon which the plaintiff's complaint necessarily relies on, even if not physically attached to the complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

**B. Motion to Stay**

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The rule does

not require that the issues in the independent proceeding be necessarily controlling of the action before the court. *Id.* 863–64. When deciding whether to stay a pending proceeding, a court must weigh competing interests including: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The moving party bears the burden of making out a clear case of hardship on inequity in being required to go forward. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

## III. DISCUSSION

**A. Motion to Dismiss**

### 1. Affordable Care Act Section 1557 Claim

Under section 1557 of the ACA, health programs or activities receiving federal financial assistance are prohibited from discriminating against individuals on the basis of any ground listed under four different civil rights statutes including Title IX, which prohibits discrimination on the basis of sex. 42 U.S.C. § 18116(a); 20 U.S.C. § 1681.

#### *i. The ACA Protects Against Gender Discrimination*

RCHSD moves to dismiss the ACA claim arguing that transgender individuals were not protected at the time of the alleged conduct because the U.S. Department of Health & Human Services Office for Civil Rights' ("HHS") regulation,[3] prohibiting discrimination on the basis of gender identity, did not go into effect until July 18, 2016 and cannot be applied retroactively. Ms. Prescott argues that the claim is not based on the HHS' regulation, but is instead

---

[3] When implementing the Title IX portion of section 1557, HHS defines discrimination "on the basis of sex" to include "termination of pregnancy" and "gender identity." 45 C.F.R. § 92.4.

6
16-cv-02408-BTM-JMA

grounded in the language of the statute itself. Because the Court does not rely on the HHS's regulation in concluding that the claim survives under the plain language of the ACA, the Court need not decide whether the regulation applies retroactively.

At the outset it is worth noting that in evaluating Title IX claims, federal courts regularly look to Title VII cases for guidance. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992); *Patricia H. Berkeley. Unified Sch. Dist.*, 830 F. Supp. 1288, 1290 (C.D. Cal. 1993). In *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000), the Ninth Circuit relying on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), reasoned that "'sex' under Title VII encompasses both sex—that is, the biological difference between men and women–*and* gender." It explained that while earlier cases distinguished between "sex" and "gender," the Supreme Court in *Price Waterhouse* abandoned this distinction and held that Title VII bars discrimination based on both an individual's sex and failure to conform to socially-constructed gender expectations. *Id.* In *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 Fed. Appx. 492, 493 (9th Cir. 2009), the Ninth Circuit reaffirmed that "it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men or women."

Other Circuits have similarly interpreted the sex discrimination provisions under Title IX and Title VII to protect transgender individuals from discrimination. *See, e.g.*, *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) ("[D]iscrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender."); *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) ("[A] label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity."); *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215–16 (1st

Cir. 2000) (holding that a transgender individual stated a claim for sex discrimination under the Equal Credit Opportunity Act); *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F.3d 1034, 1049 (7th Cir. 2017) (granting a preliminary injunction and holding that the plaintiff had established a likelihood of success under Title IX where the school denied a transgender boy access to the boy's restroom). Because Title VII, and by extension Title IX, recognize that discrimination on the basis of transgender identity is discrimination on the basis of sex, the Court interprets the ACA to afford the same protections.

     RCHSD attempts to narrowly construe *Schwenk* by arguing that it is limited to protecting transgender individuals only under a theory of sex stereotyping. It argues that unlike in *Schwenk*, here, the Complaint fails to state a plausible claim of transgender discrimination based on sex stereotyping because there are no allegations that Kyler was discriminated against because he failed to look, act, or speak in the way expected of a male or female. Even if the Court were to read *Schwenk* so narrowly, the ACA claim nevertheless survives. As other courts have recognized, "[b]y definition, a transgender individual does not conform to the sex-based stereotypes of the sex that he or she was assigned at birth." *Whitaker*, 858 F.3d at 1048; *see also Glenn*, 663 F.3d at 1316 ("A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes."). The Complaint alleges that the RCHSD staff discriminated against Kyler by continuously referring to him with female pronouns, despite knowing that he was a transgender boy and that it would cause him severe distress. RCHSD's staff allegedly refused to treat Kyler as a boy precisely because of his gender non-conformance. In fact, the Complaint alleges that one RCHSD employee told him, "Honey, I would call you 'he,' but you're such a pretty girl." (Compl. ¶ 44.) Accordingly, Ms. Prescott's

8

16-cv-02408-BTM-JMA

claim on behalf of Kyler survives under the ACA[4].

### ii. Standing

RCHSD argues that Ms. Prescott lacks standing to assert a section 1557 claim on her own behalf because she is not an aggrieved party. However, as Ms. Prescott has noted, she is not bringing the claim on her behalf, but instead on behalf of Kyler. While Ms. Prescott is unable to bring a claim as an individual, she certainly can bring the claim on behalf of Kyler within her representative capacity. *See Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1114–1115 (N.D. Cal. 2013) (holding that while parents may not bring a Title IX claim as individuals, they may bring such claim on behalf of a deceased child).

### iii. Declaratory and Injunctive Relief Under the ACA

RCHSD argues that Ms. Prescott lacks standing to seek declaratory or injunctive relief under section 1557 of the ACA. The Court agrees.

Lack of standing deprives this Court of Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (9th Cir. 2000).

A plaintiff seeking injunctive relief must allege "continuing, present adverse effects" stemming from the defendant's actions," "past exposure to illegal conduct does not in itself show a present case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Here, Ms. Prescott seeks injunctive relief "so that in the future RCHSD will provide appropriate, nondiscriminatory care to all of its patients, regardless of sex, gender identity, and/or disability." (Compl. ¶ 11.) If not enjoined, Ms. Prescott alleges, "Defendant will continue to engage in the unlawful acts and practices of discrimination complained of herein." (Id. at ¶ 12.)

---

[4] Because the Court holds that Ms. Prescott has sufficiently stated a claim under section 1557 of the ACA, it need not decide whether she has sufficiently pled claims under other theories of liability.

Ms. Prescott is unable to demonstrate a likelihood of facing future similar harm. Additionally, she has not alleged how an injunction or declaratory relief will redress Kyler's injuries. Therefore, Ms. Prescott is unable to seek declaratory or injunctive relief and RCHSD's motion to dismiss is granted as to these remedies.

### *iv. Pain and Suffering Damages*

The parties dispute whether non-economic compensatory damages, such as damages for pain and suffering, survive Kyler's death under the ACA[5]. RCHSD argues that California's survival statute, California Code of Civil Procedure section 377.34, applies to federal claims and bars Ms. Prescott from recovering emotional distress damages. RCHSD relies on *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1127 (E.D. Cal. 2011) to argue that under the ACA, Ms. Prescott cannot recover damages for the purported emotional distress that Kyler suffered before his death. The district court in *Walsh* held that the plaintiffs were precluded from recovering damages related to the decedent's emotional distress because California's survival statute applies under 42 U.S.C. section 1988(a)[6]. *Walsh*, 827 F. Supp. 2d at 1127. Ms. Prescott, on the other hand, relies on *Lopez v. Regents of the Univ. of Cal.*, 5 F. Supp. 3d 1106, 1119 (N.D. Cal. 2013) to argue that federal common law, not California law, governs and therefore permits her to recover damages for pain and suffering. First, the court in *Lopez* reasoned that section 1988(a) does not apply to modern civil rights provisions such as Title IX. *Lopez*, 5 F. Supp. 3d at

---

[5] The parties do not appear to dispute that damages for emotional distress under the California claims are unavailable. *See* Cal. Civ. Proc. § 377.34 ("In an action or proceeding by a decedents personal representative or successor in interest on the decedent's cause of action, the damages recoverable . . . do not include damages for pain, suffering, or disfigurement.").

[6] This provision provides: "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Status for the protection of all persons in the United States in their civil rights . . . shall be exercised and enforced in conformity with the laws of the United States . . . but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States . . . . 42 U.S.C. § 1988(a).

1119 ("Section 1988 is clear—it applies to *specific* claims brought under *specific* provisions that do not include the more modern civil rights actions of the twentieth century."). Second, the court concluded that even if section 1988(a) did apply to Title IX, California's survival statute does not apply to Title IX because its application would be inconsistent with the broad remedial purpose of Title IX. *Id.*

Because the ACA draws on Title IX's prohibition on discrimination on the basis of sex, the Court is persuaded by the *Lopez* court and holds that federal common law governs the question of whether Ms. Prescott may recover damages for Kyler's emotional distress. As such, she can recover for emotional distress damages under the ACA.

**2. California's Unruh Civil Rights Act Claim**

RCHSD argues that Ms. Prescott lacks standing to assert an Unruh Civil Rights Act claim on behalf of Kyler and herself. Because she does not seek to bring an action as an individual, the Court need only address her ability to assert an Unruh Act claim on behalf of Kyler.

RCHSD relies on cases that address an organization's standing under Unruh to argue that Ms. Prescott lacks standing to assert a claim on behalf of Kyler. *See Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal. App. 3d 1377, 1386 (1990) (holding that a nonprofit organization lacked standing under Unruh because its civil rights had not been personally violated and it failed to show that any of its members would suffer injury); *see also Bowden v. Redwood Inst. For Designed Educ., Inc.*, No. C98–1312, 1999 WL 138889, at *5 (N.D. Cal. Mar. 9, 1999) (holding that a teacher could not sue as a representative of her students under Unruh). These cases, however, are inapplicable because Ms. Prescott brings this action as Kyler's personal representative under California's survivorship statute, Cal. Civ. Code Proc. §

//
//

11

16-cv-02408-BTM-JMA

377.30. California's survivorship statute states that "a cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Proc. § 377.30.

Accordingly, Ms. Prescott, as Kyler's mother and within her capacity as his personal representative, may bring California state law anti-discrimination claims, including Unruh causes of action, on his behalf. RCHSD's motion to dismiss is therefore denied as to the Unruh claim.

### 3. California Government Code Section 11135 Claims

Ms. Prescott asserts claims under California Government Code section 11135, alleging that RCHSD denied Kyler and her "full and equal access to services" by discriminating against him on the basis of "sex" and "disability" under the statute. Remedies for violations of Government Code section 11135, which prohibits entities receiving funding from California from discriminating on the basis of sex and disability, are limited to "a civil action for equitable relief." Cal. Gov't Code § 11139; *see Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 594 (2008) ("Government Code section 11139 demonstrates that when the Legislature wanted to limit the remedies available in a private enforcement to equitable or injunctive relief, it clearly knew how to do so."). While RCHSD does not raise the issue of standing as to this claim, the Court must raise such jurisdictional issues sua sponte. *Bernhardt v. Cnty. Of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). As discussed above within the context of the ACA, Ms. Prescott has not demonstrated a threat of future harm or how an injunction would redress the alleged injuries. Because remedies are limited to equitable relief, Ms. Prescott cannot support a claim based on RCHSD's alleged discrimination under Government Code section 11135. Therefore, RCHSD's motion to dismiss this claim is granted and the Court need not reach RCHSD's separate

arguments.

**4. UCL Claims**

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). As to an unlawful business practice, the UCL's coverage is broad and sweeping, and embraces "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). "By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Id.* (quoting *State Farm Fire & Casual Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996)). Under the unfair prong of the UCL, a plaintiff must allege sufficient facts to demonstrate that RCHSD's "unfair" business practice: (1) offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (2) is tied to a legislatively declared policy. *See Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 736 (9th Cir. 2007); *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999) (internal quotations omitted). Finally, a fraudulent business practice is one that is likely to deceive the public and can be based "on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006) (internal citations omitted).

RCHSD argues that the UCL claims should be dismissed because Ms. Prescott does not have standing to assert a UCL claim as an individual or on behalf of Kyler.

### *i. Failure to State a Claim on Her Own behalf*

First, RCHSD challenges Ms. Prescott's standing to assert a UCL claim as an individual, arguing that she has failed to demonstrate that the alleged unfair business practices caused the alleged economic injury and that she relied on the alleged misrepresentations.

A plaintiff injured by a violation of the UCL may only seek restitution and injunctive relief.[7] *See* Cal. Bus. & Prof. § 17203. A plaintiff bears the burden of establishing that she has standing for each type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Standing under the UCL is substantially narrower than federal standing under Article III, section 2 of the U.S. Constitution. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 324 (2011). Under the UCL, only a plaintiff who has suffered an injury in fact and has lost money or property as a result of unfair competition has standing to bring an action for relief. *Id.* at 320–21; Cal. Bus. & Prof. § 17204. To satisfy this standing requirement, the California Supreme Court requires a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. *economic injury*, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp.*, 51 Cal.4th at 322. Where a plaintiff alleges fraudulent business practices, the UCL's standing requirement imposes an actual reliance requirement on named plaintiffs seeking relief under the fraudulent prong.

---

[7] Though not raised in RCHSD's motion to dismiss, Ms. Prescott also moves for injunctive relief under both the UCL and FAL. (Compl. at ¶ 110). To establish standing to seek injunctive relief, a plaintiff must allege facts that indicate that a defendant is likely to continue utilizing unfair competition practices or that she will face a similar future harm. *See Lyons*, 461 U.S. at 111. Here, there is no evidence in the record that there is any probability that RCHSD will continue to use unfair competitive practices. Likewise, Ms. Prescott has not provided evidence to show that they will face similar harm in the future. As such, the Court finds that she does not have standing to seek injunctive relief.

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1257 (2009). The Supreme Court of California has explained that "while a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *In Re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009). A plaintiff can establish that a defendant's misrepresentation was "an immediate cause . . . by showing that in absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* at 326.

Ms. Prescott rests her individual UCL claim under the fraudulent prong, alleging that RCHSD "[u]nfairly and falsely represented itself to Katharine, Kyler, and to the general public as being capable of working with transgender patients and patients with dysphoria . . . ." (Compl. ¶ 104(a).) She alleges that these representations were made through "operation of RCHSD's Gender Management Clinic, through statements and information contained on its website and in statements to Katharine prior to and during Kyler's stay at RCHSD." (Id.) Ms. Prescott further alleges that she "would not have sought medical care for Kyler at RCHSD had she known that RCHSD's claims were false." (Id. at ¶ 105.) The Court finds that Ms. Prescott has sufficiently demonstrated that as a result of RCHSD's alleged misrepresentations, she suffered economic injury, including but not limited to medical and hospital costs, counseling fees, travel expenses, and other out-of-pocket expenses. Ms. Prescott sufficiently alleges that but for RCHSD's misrepresentations, she would not have sought medical care for Kyler at RCHSD and taken him to another local emergency room.

Second, RCHSD argues that the UCL claim fails because the statements on its website were referencing the Gender Management Clinic, located within the Endocrinology and Diabetes program, not in the CAPS unit, which Kyler was

15

16-cv-02408-BTM-JMA

admitted to.  While the statements on the website may have been related to RCHSD's Gender Management Clinic, whether it was "material" to Ms. Prescott's choice in taking Kyler to RCHSD's emergency room is a question of fact for a trier of fact to decide at a later time.  *See In re Tobaacco II Cases*, 46 Cal.4th at 327 ("A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonable find that a reasonable man would have been influenced by it.") (internal citations omitted).

      Finally, RCHSD challenges Ms. Prescott's reliance on the assurances that RCHSD staff made that Kyler's sex and gender identity would be respected because they do not constitutes "commercial speech."  Ms. Prescott in turn argues that false speech is not required to state a UCL claim.  While true that a plaintiff may allege an independent UCL claim under the unfair or unlawful prongs, Ms. Prescott's UCL claim depends on RCHSD's alleged misrepresentations.  "California's consumer protections laws, like the unfair competition law, govern only *commercial* speech."  *Rezec v. Sony Pictures Entm't, Inc.*, 116 Cal. App. 4th 135, 140 (2004) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 967 (2002)).  Typically, commercial speech is "speech that does no more than propose a commercial transaction."  *Rezec*, 116 Cal. App. 4th at 141 (internal citations omitted).  The Court finds that the assurances made by RCHSD's staff do not constitute commercial speech.  However, because Ms. Prescott has sufficiently alleged a UCL claim based on the alleged misrepresentations on RCHSD's website, RCHSD's motion to dismiss her UCL claim is denied.

//

### *ii. Standing on Behalf of Decedent*

Ms. Prescott has standing, as an individual representative, to bring a UCL claim on behalf of Kyler under California's survivorship statute if Kyler was able to bring the suit on his own behalf prior to his death. *See Lintz v. Bank of America, N.A.*, No. 13-cv-01757, 2013 WL 5423873, at *9 (Sept. 27, 2013) ("[A] case of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period. . . . Thus, the correct inquiry is not whether it was impossible for Plaintiff to bring suit, but whether it was impossible for [the decedent] or his successor in interest to bring suit."). Thus, RCHSD's cases discussing representative class standing and assignment-based rights to bring claims under the UCL are inapplicable. *See Arias v. Super. Ct.*, 46 Cal.4th 969, 977–80 (2009) (holding that a private party could pursue a representative action on behalf of others under the UCL only if the party met the requirements for a class action); *see also In re WellPoint, Inc. v. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 898 (C.D. Cal. 2012) (holding that plaintiffs could only pursue UCL claims via assignment if they satisfied class action requirements). Here, as to the fraudulent prong of the UCL, the Complaint does not allege that Kyler actually relied on RCHSD's misrepresentations. Nevertheless, the claim survives because Ms. Prescott has sufficiently alleged claims for Kyler under the UCL's unlawful and unfair prongs. Thus, RCHSD's motion to dismiss the UCL claim is denied.

**5. FAL Claims**

RCHSD challenges Ms. Prescott's standing to bring claims on behalf of Kyler and herself. The standing requirements under California's UCL and FAL are the identical. *See Kwikset Corp.*, 51 Cal.4th at 320–21. Therefore, as already discussed within the context of the UCL, Ms. Prescott has sufficiently alleged a claim for herself, but has failed to allege actual reliance as to Kyler. Accordingly, RCHSD's motion to dismiss is denied as to Ms. Prescott's FAL

claim, but granted as to Kyler's.

**B. Motion to Stay**

RCHSD argues that a stay of this action is appropriate for two reasons: (1) pending the Supreme Court's decision in *Gloucester Cnty. Sch. Bd. V. G.G.*, 136 S.Ct. 2442 (2016); and (2) due to the nationwide injunction issued in *Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016). Because, as Ms. Prescott notes, the Supreme Court has remanded *Gloucester Cnty.* to the Fourth Circuit for further consideration, RCHSD's first argument is moot. As to RCHSD's second justification, the Court exercises its discretion to deny the motion to stay on this ground because this action does not depend on the constitutionality of the HHS's regulation. In *Franciscan Alliance, Inc.*, the District Court for the Northern District of Texas addressed the issue of whether the HHS exceeded its authority under the ACA in the challenged regulations' interpretation of sex discrimination. 227 F. Supp. 3d at 6570. In finding that the plaintiffs would likely succeed on the merits, the district court enjoined enforcement of the HHS's regulation interpreting section 1557. As already discussed above, the ACA claim and the Court's decision under the ACA do not depend on the enforcement or constitutionality of the HHS's regulation. Unlike in *Rumble v. Fairview Health Servs.*, No. 14-cv-2037, 2017 WL 401940, at *3 (D. Minn. Jan. 30, 2017), where the district court relied in part on an opinion letter from the Director of the OCR, a sub-agency of HHS, which stated that section 1557 extended to claims of gender identity-based discrimination, here the Court only relies on the language of section 1557. Therefore, the Court agrees with Ms. Prescott that this action remains unaffected by the injunction in *Franciscan Alliance, Inc.*. As a result, because RCHSD has not met its burden as the moving party in demonstrating a need for a stay, its motion to stay is denied.

//
//

## IV. CONCLUSION

For the reasons discussed above, RCHSD's motion to dismiss (ECF No. 9) is **GRANTED IN PART AND DENIED IN PART** and motion to stay (ECF No. 15) is **DENIED**. The Court dismisses (1) the prayer for injunctive and declaratory relief under the ACA, (2) claims under California Government Code section 11135, and (3) Kyler's FAL claim. The Court grants Ms. Prescott leave to file a First Amended Complaint ("FAC") as to her claims under Government Code section 11135—if Ms. Prescott seeks other forms of equitable relief apart from injunctive or declaratory relief—and as to Kyler's FAL claim. Plaintiff must file an FAC that complies with Local Rule 15.1(c) within 15 days of the entry of this Order

**IT IS SO ORDERED**.

Dated: September 27, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court